IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES, | : No. 3:05cr176-12 |
| | : |
| | : (Judge Munley) |
| v. | : |
| | : |
| ERIC WEATHERSPOON, | : |
| Defendant | : |

## MEMORANDUM

Before the court is Defendant Eric Weatherspoon's motion to suppress evidence (Doc. 242). The matter has been fully briefed and the court held a hearing on October 10, 2006. The motion is thus ripe for disposition. For the foregoing reasons, we will deny the defendant's motion.

## I. Background

Eric Weatherspoon was indicted by a grand jury in the United States District Court for the Middle District of Pennsylvania on May 3, 2005 on six counts, including possession of cocaine with intent to distribute, 18 U.S.C. §2, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); possession of cocaine base (crack) with intent to distribute, 18 U.S.C. § 2, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); conspiracy to distribute unlawful drugs, 21 U.S.C. § 846; and illegal possession of firearms, 18 U.S.C. § 924(c). As part of the investigation that led to Mr. Weatherspoon's arrest, the United States obtained a series of search warrants from the District Court, Judge Thomas I. Vanaskie presiding, allowing the interception of electronic communications made

over a number of different cellular telephones.

In order to obtain the first of those warrants, the United States on February 28, 2005 submitted an affidavit prepared by Drug Enforcement Administration (DEA) Task Force Officer Joseph Coffay, who had participated in a long-running investigation of the drug conspiracy in which Eric Weatherspoon was an alleged participant. The telephone that was the subject of this application was used by Kevin Weatherspoon, an alleged co-conspirator. See Affidavit in Support of the Application of the United States for an Order Authorizing the Interception of Wire Communications, 3:05-mc-56 (hereinafter "Affidavit"), at ¶ 2. The affidavit described Officer Coffay's involvement with the case, asserted that there was probable cause to believe that the subjects of the wiretap were engaged in a continuing criminal enterprise, and claimed that normal investigative techniques would be inadequate to penetrate the conspiracy. (Id. at ¶ 92).

Officer Coffay's affidavit described in great detail the process of the investigation, the suspects who were the subject of that investigation, and the operations of the alleged drug conspiracy. Among the sources of Officer Coffay's information was a confidential informant, described in the affidavit as CS-1. The United States has since identified this informant as Devonna Gamble, and she testified at the hearing on Mr. Weatherspoon's motion to suppress. Gamble, who had agreed to cooperate with the government after being arrested in another drug case, provided a great deal of information on the alleged conspiracy's operations.

(Id. at ¶¶ 19-20). Coffay's affidavit claimed that Gamble had given him "reliable" and "accurate" information, but acknowledged that another source had recently told him Gamble had offered to sell that source cocaine. (Id. at ¶ 19). Gamble described for Coffay Eric Weatherspoon's involvement in the alleged operation, asserting that Weatherspoon was a high-ranking member of the East Coast Bloods street gang, and that he directed drug trafficking operations in Pennsylvania, New York, Connecticut and Virginia. (Id. at ¶ 20). Weatherspoon, she said, also made visits to Wilkes-Barre, Pennsylvania to deliver large quantities of drugs. (Id.). Weatherspoon allegedly dealt in large quantities of drugs, but with only a small number of people "within his organization." (Id.). The affidavit also describes a number of occasions where Gamble provided information about drug trafficking involving members of the Weatherspoon operation that turned out to be accurate. (See id. at ¶¶ 25-26; 39-40; 44-48; 56-57).

Officer Coffay described a number of reasons why normal investigative techniques had not been productive. He asserted that "the co-conspirators in this case regularly use telephones to conduct their criminal business and to insulate themselves from detection." (Id. at ¶ 92). Telephonic wiretaps would allow the government to determine the source of the drugs allegedly distributed by the defendant, and would allow the government to infiltrate an organization that avoided face-to-face meetings. (Id. at ¶¶ 93-94). Simply subpoenaing call records would not aid the investigation, Coffay claimed, because those records would not necessarily

3

reveal the identity of those who called or the contents of the conversations. (Id. at ¶ 95). The compartmentalized nature of the drug operation made arresting lower-level operatives unhelpful, since identifying one small group of operatives did not lead to the arrest of a larger group or source. (Id. at ¶ 97). Surveillance had been attempted in the case, but was unsuccessful in identifying new, high-level targets because "once members have been arrested, new persons are simply assigned by the organization to take the places of those arrested." (Id. at ¶ 98). An undercover agent could not successfully be inserted into the operation, since it was peopled by long-time associates unlikely "to engage in transactions with anyone they do not know and trust" and the leaders of the organization would not introduce anyone new to their suppliers. (Id. at ¶ 99).

Officer Coffay also discounted the possibility that a confidential informant could infiltrate the hierarchy of the enterprise. Though such sources had aided the investigation, the compartmentalized nature of the organization made it impossible for a confidential source to obtain cocaine directly from Eric or Kevin Weatherspoon. (Id. at ¶ 100). Neither could such a source observe the Weatherspoons obtaining cocaine from their suppliers. (Id.). A large-scale drug operation like the one the Weatherspoons allegedly ran, Officer Coffay explained, "consists of numerous people who play discreet roles, such as suppliers, couriers, packagers, drivers, distributors, and the like." (Id. at ¶ 101). This arrangement created "layers" between the different parts of the organization and allowed the leaders to protect their

identities and made their arrests more difficult. (Id.).

Other techniques, Officer Coffay asserted, would also fail to penetrate the alleged criminal organization. Investigative Grand Juries "would likely alert the subjects to the existence of this investigation" because of the many subpoenas that would have to be issued. (Id. at ¶ 103). These subpoenas would alert subjects to the investigation and lead to more cautious behavior, making the investigation even more difficult. (Id.). Interviews would similarly inform suspects of the on-going investigation, and would probably "result in the abandonment or alteration of the scheme, injury to potential witnesses, and the destruction of whatever physical evidence may exist." (Id.). Executing search warrants had proved unsuccessful in the past, as they had not revealed the broad scope of the criminal enterprise, and would alert suspects to the on-going investigation. (Id. at ¶ 104). Earlier searches had led to the seizure of significant amounts of drugs and money, but had not served to slow the organization's operations. (Id.). Members of the organization who had been arrested refused to talk, and Officer Coffay alleged that "other members who have apparently participated for years in this close-knit drug trafficking organization would also not cooperate in the investigation and that their sources of supply and customers for controlled substances would remain unidentified." (Id.). The violent nature of the organization–at least one shooting involving participants had occurred in the year preceding the application–meant that any person cooperating with the investigation would likely face retaliation. (Id. at ¶ 106).

5

Upon consideration of the information contained in Officer Coffay's affidavit, Judge Vanaskie authorized the search warrant on February 28, 2005.[1] After his arrest and in preparation for trial, Weatherspoon filed a motion to suppress the evidence obtained through this electronic warrant and four other similar warrants issued by the court.[2] A hearing was held on that motion before this court on October 10, 2006.

## II. Legal Standard

The procedures by which a court may authorize the interception of electronic communications are specified in 18 U.S.C. §2518.[3] Section (c) of that provision requires an affidavit from an investigating officer in the case that provides "a full and

---

[1] The United States obtained authorization for four additional wiretaps covering five telephone numbers, on March 10, 2005 (Doc. 3:05mc67), March 17, 2005 (Doc. 3:05mc74), April 11, 2005 (Doc. 3:05mc90), and April 15, 2005 (Doc. 3:05mc104). The applications contain substantially similar allegations regarding the necessity of the warrant. At the hearing on the motion to suppress the parties agreed that Defendant Weatherspoon's motion would cover all of the applications, but testimony focused only on the initial, February 28 application. Accordingly, our discuss will address in detail only this application. Our reasoning applies, however, to all of the warrant applications.

[2] In his original motion, Weatherspoon appeared to challenge only the initial wiretap authorization, apparently assuming that subsequent authorizations were only an extension of the original. At the suppression hearing, the defendant–at the suggestion of the government–orally amended his motion to cover each wiretap authorization, and this court granted that motion. (Notes of Testimony of Suppression Hearing, October 10, 2006 (hereinafter "N.T.") at 12).

[3] The law also requires that the affidavit detail the offense that has been, is being or is about to be committed, and the judge who issues the order to wiretap must find that probable cause exists for this allegation. 18 U.S.C. §§ 2518(1)(b)(i), 2518(3)(a). As the defendant does not challenge the finding of probable cause in this case, we will not address that issue.

complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." See 18 U.S.C. § 2518(1)(c). Upon receipt of this application, the judge may issue an order allowing the interception of communications if the judge determines that there is probable cause for belief that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or be too dangerous." 18 U.S.C. §2518(3)(c). See United States v. Giordano, 416 U.S. 505, 515 (1974) (holding that "the applicant must state and the court must find that normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or be too dangerous.").

Courts require that the government make a reasonable effort to use traditional investigative procedures before seeking permission to use a wiretap, but "the government need not demonstrate that it exhausted all investigative procedures" to obtain such authorization. United States v. Santana, 342 F.3d 60, 65 (1st Cir. 2003). The affidavit nevertheless must contain more than just form language: "'generalities, or statements in the conclusory language of the statute, are insufficient to support a wiretap application. The statements must be factual in nature and they must specifically relate to the individuals targeted by the wiretap.'" United States v. Cline, 349 F.3d 1276, 1280-81 (10th Cir. 2003) (quoting United States v. Castillo-Garcia, 117 F.3d 1179, 1188 (10th Cir. 1997)); see also United States v. Lilla, 699 F.2d 99, 104 (2d Cir. 1989) (holding that "Like other courts, we reject generalized and

conclusory statements that other investigative procedures would prove unsuccessful.").

## II. Weatherspoon's Motion

Defendant Weatherspoon contends that the information obtained through electronic surveillance in this case should be suppressed because "the government failed to set forth sufficient reason as to why normal investigative procedures would not be successful in its affidavit" supporting the request to intercept wire communications. (Memorandum in Support of Defendant's Motion to Supress [sic] Evidence (Doc. 289) at 6-7). The defendant points to two reasons why the government's affidavit is insufficient. First, defendant notes that the government's own affidavit points to suspicions about the reliability of CS-1 (Gamble), but that many of the specific allegations in the affidavit are supported solely by information from this same informant. (Id. at 2). Second, defendant contends that the large number of calls from Gamble to Kevin Weatherspoon indicate that this informant was more deeply involved with the Weatherspoons than the affidavit admits. (Id. at 4). This close relationship, defendant contends, made electronic surveillance unnecessary. (Id.). The informant could have been utilized by the government to infiltrate the organization, but the government did not ask her to make a controlled buy or wear a wire in order to develop evidence. (Id.). The defendant argues that "if CS-1 was used to her fullest potential given her perceived involvement with Eric Weatherspoon's drug trafficking organization, the need of electronic surveillance

would be negated." (Id. at 7).

We find that the circumstances alleged in the affidavits submitted with the applications for inspection of wire communications were sufficiently specific to meet legal requirements. See United States v. Simpson, 813 F.2d 1462, 1472 (9th Cir. 1987) (requiring that the government provide "specific circumstances indicating that traditional techniques cannot reveal the broader picture" to obtain authorization for electronic eavesdropping). In this case, investigators made use of search warrants, surveillance, pen register information, questioning of witnesses and participants, and other traditional police techniques and still were unable to penetrate the alleged criminal enterprise. Detective Coffay testified that police tried "suveillance. We attempted to find somebody that would be able to buy off of Mr. Weatherspoon. We attempted to arrest some of the other individuals that [sic] we felt were getting drugs from Mr. Weatherspoon. We did interviews of these people and others we believed might be getting drugs from Kevin or Eric Weatherspoon." (N.T. at 34-35). The affidavits used to obtain the wiretaps describe in detail the methods and techniques used to obtain information, and explain with acceptable particularity the reasons why traditional techniques could not penetrate the closed world of the Weatherspoon operation. See Cline, 349 F.3d at 1280 (describing "traditional investigative techniques" as "'(1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary; (3) the use of search warrants; and (4) infiltration of

9

conspiratorial groups by undercover agents or informants.'") (quoting United States v. VanMeter, 278 F.3d 1156,1163-64 (10th Cir. 2002)). The government has demonstrated that it made a reasonable effort to engage in traditional investigative techniques.

Furthermore, the nature of the alleged criminal organization made wiretaps necessary. The affidavits lay out how the Weatherspoons' operation was "largely peopled by residents of Queens, New York, and/or persons who have proven themselves within the organization." (Affidavit, at ¶ 99). Any newcomers would be closed off from information about suppliers or other high-ranking organization members, the ultimate targets of the investigation. The investigation here focused on the organization and the people from which it bought and sold, not particular drug buys. In explaining why he needed wiretaps even though he knew the identity of some people who purchased drugs from the Weatherspoons, Detective Coffey explained that his information "didn't show the whole scope of the investigation. It didn't show everybody that was involved. It didn't show the source of supply where he was getting it from." (N.T. at 50). Wiretaps were necessary to get access to these insulated, isolated sources. Any hope of dismantling the conspiracy would otherwise disappear.[4] See United States v. Jackson, 345 F.3d 638, 645 (8th Cir. 2003) (finding a wiretap necessary because that information would lead to targets

---

[4]Our decision is not based on the ultimate success of those investigative efforts, but on the reasonableness of the claims made in the affidavit that wiretaps were necessary to continue the investigation.

10

unavailable through traditional methods and "the focus of this application was upon the conspiracy itself, not merely those individuals who were involved.").

Defendant also argues that Devonna Gamble's involvement in the Weatherspoon undermines the affidavit's claim that the wiretap was necessary because ordinary investigative means had little likelihood of success. We disagree. The affidavit does contain evidence that Gamble was closely involved with the Weatherspoons; she was able to provide investigators with information on impending sales, had close contract with Kevin Weatherspoon, knew of people who assisted the drug operation, could lead investigators to stash houses, and had relationships with several people who worked in the distribution operation. See Affidavit, at ¶¶ 19-23, 25-26, 37-40, 44-47. Her continued drug sales indicate that she still had contacts with those who might have aided the investigation. (Id. at 19). There is no evidence, however, that the informant played a significant role in the organizational operation of the alleged drug-trafficking ring, the focus of the investigation.[5] Nowhere in her testimony did CS-1 indicate that she had been closely involved at the operational level of the trafficking ring at the time she served as a cooperating witness. Instead, she appears to have made "retail" sales, and did not indicate that she could have provided investigators with access to any of the high-level

---

[5]The presence in the affidavits of five other confidential informants, none of whom appears to have penetrated the inner workings of the conspiracy, underlines the fact that traditional techniques had failed, making wiretaps necessary to facilitate further investigation.

11

distributors they sought in the case. Detective Coffay testified that despite frequent contacts with the Weatherspoons, Gamble did not appear to have earned their trust. (N.T. at 31).

This case is unlike United States v. Simpson, cited by the defendant, since no evidence exists that the informant played a major role in directing or managing the criminal enterprise and could have provided investigators with access to the inner workings of the drug conspiracy. See United States v. Simpson, 813 F.2d 1462 (9th Cir. 1987) (finding that a wiretap was improperly authorized because the affiant had mislead led the court about a confidential informant's role in the conspiracy, particularly that the informant had participated in two controlled buys for investigators). Gamble testified that she had sold drugs, but not that she had specific information about suppliers or the inner workings of the organization. Furthermore, Gamble was not as available for undercover work as the defendant claims. Gamble sold drugs for the Weatherspoons while cooperating with investigators. She did not, however, share this information with Detective Coffay. (N.T. at 59). Officer Coffay testified at the suppression hearing that "when I became aware that [Gamble] knew Eric and Kevin, I had asked her to make a buy. She would not do that. She feared for her life so that is something she would not do." (Id. at 43). The informant confirmed that she made these statements. (N.T. at 56). Investigators' understanding of the operations of the alleged conspiracy meant that

they took such threats seriously.[6] This failure to convince an otherwise cooperative witness to participate in a controlled buy demonstrates why it was reasonable for investigators to conclude that traditional investigative techniques would fail, and that wiretapping was necessary for success of the investigation.

## IV. Conclusion

We therefore find that the government's affidavits in support of its requests to intercept wire communications offered specific information that reasonably demonstrated normal investigative procedures had been tried and failed or reasonably appeared to be unlikely to succeed or be too dangerous. Accordingly, we will deny the defendant's motion. An appropriate order follows.

---

[6]We likewise do not find the affidavits defective because they are based in part on testimony from an informant who continued to sell drugs after she began speaking with the government. The information Gamble provided investigators could be (and was) corroborated from other sources, and informants about the drug trade are often necessarily tainted by connection with that activity. The defendant offers no evidence that Gamble proved inaccurate in any substantial way in her statements to investigators, nor that she purposefully misled police.

13

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | : No. 3:05cr176-12 |
| | : |
| | : (Judge Munley) |
| v. | : |
| | : |
| ERIC WEATHERSPOON, | : |
|     Defendant | : |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

AND NOW, to wit, this 12th day of October, 2006, **IT IS HEREBY ORDERED** that the defendant's motion to suppress evidence (Doc. 242) is **DENIED**.

BY THE COURT:

/s/ Judge James M. Munley
Judge James M. Munley
United States District Court